PALMER
*v.*
MOORE.

---

## SELBY *v.* GIBSON.

It is not necessary in order to impeach, on the grounds of fraud or wilful concealment of property, the certificate of a bankrupt obtained under the act of Congress of 19 August, 1841, that the grounds of impeachment should be set forth by plea; it is enough that there be prior reasonable notice to the bankrupt, specifying in writing such fraud or conceal-ment. Act of 19 August, 1841, s. 4.

SELBY
*v.*
GIBSON.

APPEAL from the District Court of Carroll, *Copley,* J. *Selby, pro se. Stockton,* on the same side. *Browder,* for the appellant. The judgment of the court was pronounced by

SLIDELL, J. The plaintiff sues upon two notes of the defendant, due in 1840. The defendant pleaded the general denial, prescription, and a bankrupt discharge. That the indebtedness once existed is fully proved. Our attention therefore will only be directed to the special grounds of defence.

The plea of prescription cannot be sustained. The evidence of acknowledgments within five years from the maturity of the notes is ample.

The defendant has established his discharge in bankruptcy, by the production of a certified transcript of the record of the United States District Court in Mississippi. By this evidence it appears that the defendant presented his petition of voluntary bankruptcy, on the 16th February, 1843. He was decreed a bankrupt on the 1st May, 1843. He had his final hearing, and was discharged, on the 7th November, 1843. His schedule of property consisted of certain lands in Washington and Warren counties in Mississippi, some cattle, furniture, &c., claims amounting to about $4,000, and eleven slaves stated to be in Warren county. For the purpose of defeating the bankrupt discharge the plaintiff offered an agreed statement of what certain witnesses, if present, would testify. This statement was in writing, and the facts which it was admitted that the witnesses would swear to, if present, are thus set forth :

" That the defendant *Ambrose Gibson,* owned and resided on the plantation on which he now lives, rising two thousand five hundred acres first rate land, being on the Mississippi river, some seven miles above the town of Lake Providence, on the opposite side of the river, from some time up to, or about, the tenth day of January, 1843, when he passed an act of sale for it, and upwards of thirty-seven effective slaves, to his brother *Tobias Gibson.* That after said sale, said *Ambrose Gibson* still remained in possession of said plantation and slaves, and used the crops raised thereon for his own benefit, until on or about December 15th, 1843, when said *Tobias Gibson* resold said plantation, lands, and slaves back again to said *Ambrose Gibson,* said *Ambrose Gibson* always remaining in possession thereof, from some time in or before the year 1842, up till the present time, and that he is still in possession thereof, and owner thereof. That said land and slaves are worth an average paid for land and slaves ; and that a sufficient quantity of said land is ordinarily well improved to work, some say, fifty slaves in raising crops, without any further clearing. That said plantation, land and slaves, and improvements thereon, are worth $50,000, and were worth nearly about the same amount, in January, 1843. That said defendant *Ambrose Gibson,* is now in affluent circumstances, worth at least some $50,000 or $100,000. That the price of the said sale from *Ambrose Gibson* to *Tobias Gibson,* of January 10th, 1843, was stated to be $45,000, and that the sale of December 15, 1843, was stated to be $60,000 cash, which was said to have been paid ' at and before the signing' of the said sale. The other sale of January 10th, 1843, was said to be for money then due said *Tobias Gibson* from said *Ambrose Gibson.*"

This statement was offered in evidence and received by the court ; and the only objection made by the defendant is presented as follows, by the bill or memorandum of exceptions: " The defendant's counsel objects to the testimony of said witnesses, *Parks,* and the clerk and sheriff of Issaquena county, named on the part of the plaintiff *to prove the sale from defendant to Tobias Gibson, and from Tobias Gibson to defendant,* as it would be proving title by parol.

The testimony of the above witnesses is objected to because it is inadmissible under the pleadings, and because it is irrelevant." Before considering the exceptions thus taken it is proper to notice that, on the 1st December, 1847, the cause was tried apparently *ex parte*, the plaintiff only offering in evidence the notes, and the testimony of a witness, and a letter to prove acknowledgments of the defendant. On the 3d December, 1847, the cause was reopened, when the defendant offered the transcript of the bankrupt proceedings, and the plaintiff then offered the agreed written statement.

The first exception to be considered is, that which involves the admissibility of the testimony under the pleadings. The 4th section of the bankrupt law, which in our opinion controls this question, declares that the discharge and certificate when duly granted shall in all courts of justice be deemed a full and complete discharge of all debts, contracts, and other engagements of such bankrupt which are proveable under the act, and shall and may be pleaded as a full and complete bar to all suits brought in any court of jurisdiction whatever, and the same shall be conclusive evidence of itself in favor of such bankrupt, unless the same shall be impeached for some fraud or wilful concealment by him of his property or rights of property as aforesaid, contrary to the provisions of this act, *on prior reasonable notice specifying in writing such fraud or concealment*. It will be observed that the act of Congress does not require that the grounds of impeachment be set forth by *plea*. It suffices if a reasonable notice and specification in writing be communicated to the defendant. The bill of exceptions therefore to the introduction of testimony tending to impeach the discharge as inadmissible under the pleadings, in other words because fraud had not been *pleaded*, was not well taken. If the exception had been taken upon the ground of the want of prior reasonable notice in writing, specifying the fraud or concealment, the bill of exceptions on its face would have been tenable; and it would then have been our duty to enquire whether the record did not furnish satisfactory evidence that the defendant had been notified of the grounds of impeachment. We think it proper to hold the defendant strictly to the exception as taken, from a consideration of the manner of the trial and proceedings. If the defendant had excepted upon the ground of want of notice, the plaintiff would have had an opportunity of showing the circumstances under which the cause was reopened for the defendant's benefit, and the agreed statement prepared. The circumstances of the case do not indicate surprise, nor appeal to the equitable discretion which the court might in a doubtful case be permitted to exercise in the furtherance, or for the more secure administration, of justice. The objection of irrelevancy is clearly untenable.

The remaining ground of exception goes only to so much of the testimony as proves by parol the sale by the defendant to *Tobias Gibson*, and the reconveyance by *Tobias Gibson* to the defendant. If it be conceded that the exception was well taken, it merely excludes from the agreed statement the fact of those conveyances, but leaves a statement which, unaided by proof of the conveyances, is sufficient to defeat the bankrupt's discharge. It proves that for a considerable time prior to his bankruptcy the defendant owned and possessed a large plantation and thirty-seven effective slaves ; that his possession was uninterrupted from that time down to the trial of this cause ; that he used the crops for his own benefit during the pendency of the bankrupt proceedings ; and that, although certificated as a bankrupt in December, 1843, he was a man of large fortune in 1847. Upon comparing these undisputed facts with the bankrupt's schedule we find it questionable at best whether the plantation is comprehend-

ed among the lands there described, and the fact is indisputable that instead of thirty-seven effective slaves the schedule exhibits eleven only. Of these all the grown slaves are females; the residue are young children.

The defendant therefore is involved in a dilemma which is fatal. If he insist upon the exclusion of the parol proof of the sale by himself to *Thomas Gibson* and of the reconveyance by *Tobias Gibson* to himself, then he owned and possessed at the time of his bankruptcy property which he did not surrender. If, on the contrary, those conveyances and their contents are proved, we cannot consider them, under the continued possession and other circumstances, as real or *bona fide*. In either view then the discharge has been successfully impeached. See the case of the *City Bank* v. *Banks*, 1 Ann. R. 418.

*Judgment affirmed.*